IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHAUNCEY DEPREE WADE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21cv00560 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DR. MACDONALD, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Plaintiff Chauncey Depree Wade ("Wade"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate medical treatment, retaliated against him, and subjected him to cruel and unusual living conditions. This matter is before the court on Defendant Lt. Earl's ("Lt. Earl") motion to dismiss the retaliation claim against him. Having reviewed the pleadings, the court will grant Lt. Earl's motion.

**I.**

Wade alleges that while he was housed at the Roanoke City Jail ("the Jail") in August 2021, Dr. MacDonald prescribed him ivermectin[1] even though he was "never properly diagnosed or evaluated for symptoms that require such a harsh drug." (Am. Compl. at 3 [ECF No. 8].) While taking the medication, Wade claims that he suffered "persistent diarr[hea], searing burning pain in [his] gut, [and] a change in [his] ability to digest certain foods." (*Id.*)

---

[1] Ivermectin is an anti-parasite medication used to treat parasitic disease and is "an effective treatment for a wide range of other conditions . . . ." Drugs.com, *Ivermectin*, https://www.drugs.com/ivermectin.html (last visited July 6, 2022.)

Wade states that, during a medical visit in October 2021, Nurse Practitioner Davis "admitted" to him that the ivermectin "caused the release of certain poisonous bacteria into" his gastrointestinal tract and "is the reason why [he had] been suffering from burning pain, persistent diarr[hea, and] the inability to digest certain foods." (*Id.* at 3–4.) Wade alleges that Director of Nursing Stephanie Walsh, Dr. MacDonald, and Nurse Davis nevertheless "refused to have [him] taken to a hospital for an endoscopy exam, or taken to a gastrointestinal specialist to perform the necessary tests to determine if irreversible damage ha[d] been done, or if further treatment [was] necessary." (*Id.* at 4.) Wade claims that he "recently" saw on WDBJ7 news and read in the ROANOKE TIMES newspaper that the U.S. Food and Drug Administration and the National Institutes of Health have "warned against using [i]vermectin" and that "hospitals were ordering [doctors] not to prescribe [i]vermectin to patients." (*Id.* at 4.)

Wade also states that after he filed "several formal [written] complaints" about his "declining health, [his] worsening symptoms," and his "concerns over what seemed to [him] as negligent medical procedure . . . ." (*Id.* at 5.) He also alleges that Nurse Davis and Dr. MacDonald, "with the approval of" Director Walsh, "ordered" the Jail's classification department to have Wade removed from general population housing and placed in restrictive housing in October 2021. (*Id.*) Wade claims that the classification department is "supervised by Lt. Earls." (*Id.*) Wade alleges that he "was told that [he] was being moved to another location so that [his] symptoms could be monitored, but no samples were collected" and he "was not relocated to medical housing, which is connected to the nurses['] station [and] the [doctor's] office where [he] could be monitored." (*Id.*) Instead, Wade states that he was placed in "disciplinary segregation/isolation" where he was "denied visitation rights with [his]

family," had "no telephone access privileges" and "no hot water," and there was "no emergency call button" in his cell if his symptoms took "a turn for the worse." (*Id.*)

Wade alleges that on two occasions, his symptoms "got so bad" that he "cried out for help, asked to be taken to a hospital, [and to] see a [doctor]," but his "cries went unanswered." (*Id.*) He further alleges that his "numerous attempts to communicate with [the] medical department via electronic tablet [and] multiple grievances filed went days unanswered [and] were either closed without a response or found [to be] without merit by [a] grievance officer." (*Id.* at 5–6.)

Wade states that his criminal defense attorney called the Roanoke City Sheriff's Office about her concerns over Wade's "lack of proper medical care," and his girlfriend called the Jail's nurses and administration about Wade's medical needs. (*Id.* at 6.)

Wade argues that there was "no rational basis for removing [him] from [general] population [housing]" and that he was "essentially punished for becoming ill by a medication prescribed as a result of negligence by the medical department. . . [and] its employees." (*Id.*) He states that these "actions were coordinated [and] these violations were approved by classification supervisor Lt. Earls." (*Id.*) He argues that he has been "subjected to egregious, flagrant conditions [and] deprived of many rights and privileges while being housed in conditions well below the minimum standard of living," with "complete sensory deprivation [and] absolutely no peer interaction." (*Id.* at 6–7.) Wade asserts that his symptoms "persist" and his "condition may be getting worse," but he has not been taken to a hospital or seen by a gastroenterologist. (*Id.* at 7.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

### III.

Wade alleges that Lt. Earls retaliated against him by approving Wade's transfer from general population housing to restricted housing after he filed "several formal [written] complaints" about his medical treatment. (Am. Compl. at 5.) The court concludes that Wade's allegations fail to state a cognizable retaliation claim against Lt. Earls and will grant Lt. Earls' motion to dismiss this claim.

A First Amendment retaliation claim under § 1983 requires a plaintiff to prove three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

Prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker v. S.C. Dep't of Corr.*, 855

F.3d 533, 541 (4th Cir. 2017). "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). A plaintiff's "actual response to the retaliatory conduct" is not dispositive of the question of whether such action would likely deter a person of ordinary firmness. *Id.*

To prove causation for a claim of retaliation under § 1983, a prisoner must provide evidence that supports a reasonable inference that a defendant took the alleged retaliatory action because of the prisoner's exercise of a constitutionally protected right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). He must show that the protected activity was the "'but for' cause of the adverse action alleged." *Ridpath v. Bd of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006). Courts can infer causation when the adverse action occurs shortly after a plaintiff engaged in a protected activity. *See Foster v. Univ. of Maryland- E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015): *see also Honor v. Boaz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (recognizing that the elements of a prima facie Section 1983 and Title VII retaliation claims are identical). But temporal proximity between the inmate's protected activity and the allegedly retaliatory action, standing alone, is ordinarily insufficient to establish retaliation. *Johnson v. O'Brien*, No. 7:08cv22, 2008 U.S. Dist. LEXIS 41546, at *24 (W.D. Va. 2008) (quoting *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993) ("'Temporal proximity' between the inmate's protected activity and the allegedly retaliatory, official action 'is simply too slender a reed on which to rest' a § 1983 retaliation claim.")). *Accord Maxwell v. Robinson*, No. 7:13cv556, 2014 U.S. Dist. LEXIS 153902, at *8-9 (W.D. Va. Oct. 30, 2014). To refute evidence of causation,

defendants can offer a legitimate and permissible reason for their actions. *See Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 217 (4th Cir. 2016). But even after defendants have offered a legitimate reason, a plaintiff can still prevail on his claim if the evidence as a whole demonstrates that the proffered permissible reason is not the actual reason but merely a pretext. *See id.*

In the prison context, retaliation claims are treated with skepticism. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Bare assertions of retaliation are insufficient to state a § 1983 claim. Instead, the inmate must come forward with specific evidence to establish that "'but for the retaliatory motive, the complained[-]of incident . . . would not have occurred.'" *Brown v. Ratledge*, No. 7:16cv303, 2017 U.S. Dist. LEXIS 160464, at *19 (W.D. Va. Sep. 29, 2017) (quoting *Brizuela v. Immigration Ctrs. of Am.*, No. 1:15cv1662, 2016 U.S. Dist. LEXIS 170161, at *12 (E.D. Va. Dec. 7, 2016)); *Thompson v. Clarke*, 633 F. App'x 207, 208 (4th Cir. 2016). "Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed." *Johnson*, 2008 U.S. Dist. LEXIS at *25.

Here, Wade's allegations of retaliation by Lt. Earls are conclusory. Wade has not alleged facts to show that his protected conduct—written complaints about medical treatment—was a substantial or motivating factor in Lt. Earls' alleged "approval" of the cell transfer. (*See* Am. Compl. at 5.) Wade has not alleged any facts beyond mere temporal proximity to show that Lt. Earls had any retaliatory motive. Wade has not alleged that Lt. Earls was the subject of any of his complaints. In fact, Wade has not alleged facts to show that Lt. Earls was even aware of the complaints that allegedly formed the basis for retaliation. *See Constantine*, 411 F.3d at 501 ("In order to establish this causal connection, a plaintiff in a retaliation case must show, at the

very least, that the defendant was aware of her engaging in protected activity."). Further, Wade alleges that the Jail's medical staff—not Lt. Earls—ordered his transfer to restrictive housing. It is unclear whether Wade is asserting that Lt. Earls personally approved the housing transfer as the supervisor of the classification department or that the approval is imputed to him by virtue of his role as supervisor. Either way, Wade's allegations are insufficient to state a claim. To the extent Lt. Earls may have personally approved the "order" of the Jail's medical officials, to transfer Wade to restrictive housing, he is entitled to rely on their expertise. *See Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996) (finding non-medical prison personnel may rely upon the medical decisions of medical professionals).

To the extent Wade argues that Lt. Earls is liable for approving the transfer because he "supervise[s]" the classification department, his claim still fails. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"[;] and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799.

Wade has failed to allege facts that would establish any of the *Shaw* elements against Lt. Earls. As previously noted, Wade does not even allege that Lt. Earls knew about the complaints Wade had filed. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Accordingly, the court finds that Wade has not stated a viable retaliation claim against Lt. Earls.

## V.

For the reasons stated, the court will grant Lt. Earl's motion to dismiss. The court notes, however, that Lt. Earls' motion does not address Wade's living conditions claim against Lt. Earls and, thus, Lt. Earls remains in this action as a defendant.[2] Wade will be permitted to file an amended complaint within 21 days, if he so chooses.[3]

The clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of July, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[2] The court makes no determination at this time as to whether any living conditions claim against Lt. Earls has any merit; rather, the court simply determines that, liberally construing his complaint, Wade has alleged a living-conditions claim.

[3] Wade is reminded that *all* of his factual assertions and claims *must* be in a single document. If he elects to file an amended complaint, his prior filings will *not* be considered by the court.